AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br>David Humphries<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)       14-84 MAG<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  From on or about June 1, 2012, through the present  in the parish of  Jefferson  in the

Eastern  District of  Louisiana , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(b)(1)(A) | Conspiracy to distribute 1 kilogram or more of heroin |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Andrew P. Roccaforte, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  7-1-14

_____
*Judge's signature*

City and state:        New Orleans, Louisiana         Honorable Michael B. North, U.S. Magistrate Judge
*Printed name and title*

Process ☒ (2CC USM)
X  Dktd
__ CtRmDep
__ Doc. No.

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally came and appeared Andrew P. Roccaforte of the Drug Enforcement Administration ("DEA"), United States Department of Justice, who, after being duly sworn, deposed and stated the following information, which he acknowledges as true to the best of his knowledge and belief:

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice, currently assigned to the New Orleans Field Division ("NOFD") of DEA, High Intensity Drug Trafficking Area ("HIDTA"). I have been employed as a DEA Task Force Officer for over two years, having worked for twenty-one years (21) as a Police Officer in the New Orleans Police Department, including over fifteen years as a narcotics detective. I have participated in numerous investigations involving drug trafficking violations, including, but not limited to, the distribution, importation, manufacturing, and possession with the intent to distribute illegal controlled substances, and conspiracy to commit the same, as well as the use of communication facilities, such as telephones, digital telephone pagers, and other like facilities, to facilitate drug law violations.

2. As a result of my training and experience as a DEA Task Force Officer, I am familiar with federal criminal laws relating to drug trafficking. I know that it is a violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A) for a person to conspire to distribute or possess with intent to distribute one kilogram or more of heroin.

3. I submit this affidavit in support of a criminal complaint for **DAVID HUMPHRIES a.k.a. "Teacher,"** because I believe that probable cause exists to arrest **HUMPHRIES** for the commission of one or more federal criminal offenses based upon the

1

following facts that I have learned from my own personal investigation of this matter, as well as from the following reliable sources:

    a. Oral and written reports about this and other investigations that your affiant has received from members of DEA and the New Orleans Police Department ("NOPD");

    b. Physical surveillance conducted by DEA and NOPD that has been reported to your affiant directly or indirectly;

    c. Public and subpoenaed records;

    d. Review of pen register and trap and trace information, telephone call records, and subscriber information;

    e. Monitored and recorded conversations and text messages obtained through court-authorized wire intercepts of target telephones;

    f. Interviews of cooperating sources whose information has been corroborated by this investigation; and

    g. Voluntary admissions by **HUMPHRIES**.

4. This affidavit is submitted for the limited purpose of securing a criminal complaint, and therefore your affiant has not set forth each and every fact known to him concerning this investigation. Your affiant has included what are believed to be facts sufficient to establish probable cause for the complaint sought. Your affiant also not disclosed the identities of those of **HUMPHRIES'** uncharged criminal associates mentioned within this affidavit in order not to compromise an ongoing investigation.

5. After conducting a series of court-authorized wire intercepts on local New Orleans heroin dealers, DEA agents identified DEFENDANT A as a Houston-based heroin

trafficker who was distributing multiple kilograms of heroin at a time to two high-level New Orleans area heroin wholesalers, and also identified **DAVID HUMPHRIES a.k.a. "Teacher"** as one of DEFENDANT A's primary couriers who was bringing multi-kilogram quantities of heroin to, and picking up bulk currency drug debt payments from, the New Orleans wholesalers on behalf of DEFENDANT A. DEA conducted lawful searches of electronic communications among DEFENDANT A, **HUMPHRIES**, and their two New Orleans wholesale customers and secured Title III wire intercepts on cellular phones used by DEFENDANT A to orchestrate his trafficking and money laundering activities.

6. The communications obtained, which were corroborated by other sources, including public source, flight, vehicle rental, hotel, banking, phone toll, cell site, and other records, as well as physical surveillance and reliable confidential source information, demonstrated that, beginning at a time unknown but before June 1, 2012, and continuing to the present, **HUMPHRIES** agreed and conspired with DEFENDANT A to distribute heroin in the New Orleans area. After the death of DEFENDANT A's primary New Orleans wholesale heroin customer in or around May 2013, DEFENDANT A dealt more directly with his two other New Orleans wholesale customers. DEFENDANT A would then notify these two customers directly, usually via text message, when he was sending heroin to them by referring to heroin as "love" and by using multiple heart-shaped text message icons to indicate the number of kilograms that were being sent. DEFENDANT A would also indicate when he, or more often one of his couriers, would be arriving travel to the New Orleans area to make the delivery, or to pick up "documents" or "docs," code works for bulk currency. For heroin deliveries, DEFEDANT A would direct delivery to Jefferson Parish, Louisiana, by common carrier. Then courier, usually **HUMPHRIES**, would arrive in Jefferson Parish, Louisiana, and pick up the heroin shipment and

3

deliver it to the two wholesalers in Jefferson Parish. These heroin deliveries, in the amount of approximately three to five kilograms of heroin per delivery, occurred approximately once per month during this period.

7. On June 30, 2014, DEA Houston prepared to execute federal search warrants at multiple residential and commercial addresses in the Houston, Texas, area utilized by DEFENDANT A and **HUMPHRIES** in furtherance of their trafficking and laundering activities. During pre-warrant surveillance, agents located DEFENDANT A and **HUMPHRIES** and detained them. **HUMPHRIES** was advised of the nature of the investigation and his rights per *Miranda*, and **HUMPHRIES** indicated that he understood those rights but was willing to cooperate and answer questions regarding the investigation. **HUMPHRIES** also signed a DEA Advice of Rights form.

8. **HUMPHRIES** stated that he had known DEFENDANT A for thirty years, and that he had been acting as a transport for DEFENDANT A's trafficking activities because he owes DEFENDANT A for taking care of him. **HUMPHRIES** stated that on multiple occasions, DEFENDANT A had directed him to go to a known common carrier in Jefferson Parish, Louisiana, to pick up a shipping box with a container inside, and to bring the box to the apartment one of the two known New Orleans area heroin wholesale customers in Jefferson Parish, where the other of the two customers would also meet. The heroin was then removed from the container by the customers in the presence of **HUMPHRIES**. The customers also provided bulk currency to **HUMPHRIES** in payment for their heroin debts to DEFENDANT A, which **HUMPHRIES** then mailed to DEFENDANT A in Houston. At DEFENDANT A's direction, **HUMPHRIES** also shipped packages of heroin to other locations. Most recently, approximately one month ago, **HUMPHRIES** went to a storage unit in Jefferson Parish utilized

by DEFENDANT A to store heroin; picked up a package of heroin; and shipped it to a Charlotte, North Carolina, address at the direction of DEFENDANT A.

9. Based upon the above information, I submit that probable cause exists to conclude that **HUMPHRIES**, beginning at a time unknown but before June 1, 2012, and continuing to the present, did conspire with DEFENDANT A and others to distribute heroin in the Eastern District of Louisiana, in violation of Title 21, United States Code, Sections 846 and 841(a)(1)(B).

_____
Andrew Roccaforte
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me
this 1st day of July, 2014, at 11:25 a.m.,
New Orleans, Louisiana.

_____
HONORABLE MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

5